IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 1:17-CR-249-MHC-LTW |
| v. | |
| RODERICK MANSON, | |
| Defendant. | |

### MAGISTRATE JUDGE'S ORDER, FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING CASE READY FOR TRIAL

Pending before this Court are Defendant Roderick Manson's Motion to Suppress Evidence and Statements (Doc. 43), Particularized Motion to Suppress Evidence and Statements (Doc. 54), and Post-Hearing Brief Motion to Suppress Evidence and Statements (Doc. 63). For the reasons outlined below, this Court **RECOMMENDS** that Defendant's Motions to Suppress be **DENIED** with respect to his arguments for suppression of evidence (Docs. 43, 54, 63), and **DEEMED MOOT** with respect to Defendant's arguments for suppression of his statements (Docs. 43, 54, 63).

### MOTIONS TO SUPPRESS EVIDENCE AND STATEMENTS

On July 25, 2017, a grand jury in the Northern District of Georgia returned an Indictment charging Defendant Roderick Manson ("Defendant") with (1) conspiring to knowingly and intentionally possess with intent to distribute methylenedioxymethamphetamine (MDMA), marijuana, and cocaine in violation of 18

AO 72A
(Rev.8/82)

U.S.C. §§ 841(b)(1)(c), 846; (2) aiding and abetting to knowingly and intentionally possess with intent to distribute MDMA, marijuana, and cocaine in violation of 18 U.S.C. §§ 2, 841(a), (b)(1)(c); (3) aiding and abetting possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(I); and (4) knowingly possessing a firearm after having been convicted as a felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). In Defendant's Motions to Suppress, he argues physical evidence seized from a parked car he was sitting in should be suppressed because the evidence was discovered while law enforcement officers unlawfully detained him without having reasonable suspicion that he had committed a crime. (Doc. 63). Defendant also contends that evidence seized from the car he was sitting in, after law enforcement officers obtained a warrant, should also be suppressed because the information in the affidavit offered in support of the warrant did not supply probable cause for the search. (Doc. 54).

Additionally, Defendant initially argued that statements he made when law enforcement officers questioned him about the contents of the car without the benefit of counsel, following his placement in handcuffs and detention on the sidewalk, were inadmissible because they were the product of coercion. (Docs. 43, 54, 63). At the suppression hearing, however, the Government stated that it did not intend to use Defendant's post-arrest statements in the Government's case in chief, but reserved the right to present his statements for rebuttal or impeachment purposes. Because the suppression issue will only become relevant if the Government seeks to use Defendant's

statements for impeachment or rebuttal purposes at trial, Defendant's Motions should be **DEEMED MOOT** with respect to his arguments for the suppression of his statements at this juncture. Should the issue arise, suppression can be taken up at that time.

## I. FACTUAL BACKGROUND

In April 2017, Fugitive Investigator Joshua Mauney of the Fayette County Sheriff's Office was trying to locate Melvin Gibson, who was wanted by Douglas County for violating his probation conditions. (Tr. 5). On April 13, 2017, Officer Mauney observed Gibson exiting an apartment in the Sierra Ridge Apartment complex on Delmar Lane and watched Gibson and his girlfriend drive away. (Tr. 6-7). Just prior to that, two other men had exited the apartment at about 6:30 a.m., entered a small white car, and drove away. (Tr. 6-7).

On April 14, 2017, at approximately 6:30 a.m., Officer Mauney and a team of United States Marshal's Service deputies wearing vests clearly marking them as law enforcement, returned to the apartment to arrest Gibson. (Tr. 8). Officer Mauney instructed Officer Timothy Dolan, employed by the United States Marshal Service, to command the officers stationed on the rear of the residence because he had observed what he believed to be narcotics activity there the day before. (Tr. 28-31). Officer Mauney told officers who would be covering the rear area to be aware of drug activity going on in the area and to check the cars. (Tr. 9). Additionally, Officer Dolan considered rear containment of the residence to be important because it is the first place

3

that a fugitive will run when officers knock on the front door. (Tr. 31). Approximately five or six officers covered the rear area of the apartment. (Tr. 15).

As Officer Dolan pulled up to the rear of the apartment, he observed a man wearing a red shirt standing by the open driver's side window of a white vehicle parked in the parking lot at the rear of the residence. (Tr. 33-34, 49, 55). Officer Dolan states this fact was important because the team had information that Gibson had been in a white vehicle. (Tr. 33). Officer Dolan testified that when the officers exited their vehicles and identified themselves as police, the man began abruptly moving away from the officers and towards Gibson's apartment. (Tr. 33, 35). Officer Dolan testified that he was concerned when the man began walking away because normal citizens will not walk away when officers yell "police" and request that an individual stop. (Tr. 35). At that point, several of the officers yelled at the man to get on the ground, and he complied. (Tr. 35).

Officer Dolan then focused his attention on the white vehicle. (Tr. 35). Defendant Manson was in the driver's seat of the white vehicle. (Tr. 34). Two other men were in the car–one in the front passenger seat and one in the rear passenger seat. (Tr. 38). Officer Dolan testified that at the time it was still dark outside and that he needed to identify the person in the white vehicle to make sure the vehicle and its occupants were safe. (Tr. 36). When Officer Dolan began approaching the car and made eye contact with Defendant, Defendant started to raise his window. (Tr. 36, 55). Although Officer Dolan told Defendant, "Please don't roll up your window" numerous

4

times, Defendant continued to raise the window. (Tr. 37).

Officer Dolan went to the driver's side window, to the right of the driver's side mirror, pointed his long rifle into the vehicle (which had a flashlight affixed to it), and instructed Defendant to roll down the window and to let him see Defendant's hands. (Tr. 37, 42, 49). Defendant did not comply and the window remained up. (Tr. 49). Officer Dolan states that at the time, he was looking inside the vehicle with the flashlight that was affixed to and was part of his weapon. (Tr. 37, 57-58). Officer Dolan admits that at this point, his weapon was pointing at Defendant. (Tr. 57). Officer Dolan testified that while his flashlight was aimed at the interior of the car, he was able to see a baseball-size amount of white powder substance Officer Dolan believed to be cocaine on Defendant's lap. (Tr. 38-39, 49).

After Officer Dolan saw what he believed to be cocaine, he instructed the occupants of the car to roll down the windows and to let him see their hands. (Tr. 40). Although Defendant initially held his hands up for a split second, he then moved his right hand down to the right side of his right leg in between the driver's seat and the center console. (Tr. 40, 66). As a result, Officer Dolan believed that Defendant was reaching for a firearm. (Tr. 41). Officer Dolan then concentrated his weapon on Defendant and told him not to do it and to slowly raise his hands. (Tr. 41). In order to gain a better vantage point of Defendant's hand, to avoid hitting anyone behind Defendant, and to be able to point his rifle through the windshield, Officer Dolan moved to the left side of the driver's side mirror. (Tr. 42). Defendant raised his hands, and

5

Officer Dolan instructed him to slowly open up the door or the window. (Tr. 42). Defendant placed his right hand down into the same spot between the driver's seat and the center console. (Tr. 42). Officer Dolan warned Defendant not to do it and that he would shoot Defendant in the face if Defendant did it. (Tr. 43). Officer Dolan instructed Defendant to raise his hand very slowly so that Officer Dolan could see what was in his hands. (Tr. 43). Defendant finally raised his hand with no firearm in it. (Tr. 43). The other occupants had already been removed from the vehicle. (Tr. 43).

After all of the occupants had exited the vehicle, a bag of cocaine and a black Glock handgun could be seen on the floorboard of the driver's seat. (Tr. 43). Another gun was found in between the front driver's seat and the center console where Defendant had been reaching, a third gun was found underneath the passenger seat, and a digital scale normally used in the drug trade to measure small amounts of drugs was discovered in the car. (Tr. 23, 46-47, 51).

## II.  **LEGAL ANALYSIS**

Defendant contends that evidenced seized from the car should be suppressed because the officers did not have reasonable suspicion to stop him or probable cause to arrest him during the encounter at the car. In support, Defendant points out that there is no evidence to connect the car occupied by him to the car leaving the day before, there was no evidence showing that Gibson was ever in the white car, there was no evidence connecting Manson to Gibson, no evidence connecting the car to criminal activity, or any evidence showing that Manson was about to engage in criminal activity. Defendant

further argues Officer Dolan lacked probable cause at the time he pointed his rifle at Defendant and demanded that Defendant comply with commands to lower the window. In response, the Government contends that Officer Dolan lawfully approached the vehicle because neither probable cause or reasonable suspicion is required for him to do so. The Government also contends that even if reasonable suspicion was required to approach the vehicle, reasonable suspicion existed once the person standing near the vehicle rapidly walked away and Defendant rolled up the window. In support, the Government points out that the neighborhood was a high crime neighborhood with drug trafficking and firearms activity, that the Goodfellows gang was known to operate out of the apartment complex, the man standing outside the car abruptly walked away, and Defendant rolled up the window upon Officer Dolan's approach and disregarded his commands. Finally, the Government argues that once Officer Dolan saw that Defendant was holding cocaine, probable cause existed to search the vehicle without a warrant pursuant to exceptions to the warrant requirement for searches incident to a lawful arrest or automobile searches.

By the time Defendant was seized, Officer Dolan had obtained reasonable suspicion for a detention and probable cause supporting an arrest. Officer Dolan's initial approach to the car was not a search or a seizure triggering Fourth Amendment protection. The Fourth Amendment of the United States Constitution protects the right to be free from unreasonable searches and seizures. United States v. Perkins, 348 F.3d 965, 969 (11th Cir. 2003). Brief, consensual, and non-coercive interactions do not

require Fourth Amendment scrutiny. Perkins, 348 F.3d at 969. For instance, law enforcement officers do not violate the Fourth Amendment prohibition on unreasonable seizures by merely by approaching individuals in public places and putting questions to them if they are willing to listen. United States v. Drayton, 536 U.S. 194, 200-01 (2002); Florida v. Royer, 460 U.S. 491, 197-98 (1983); Rance v. Village of Palm Springs, 645 F. App'x 933, 934 (11th Cir. 2016) (explaining that officer was free, without any level of suspicion, to approach defendant, illuminate the interior of his vehicle, and inquire why he was parked on the side of the road in the early morning); United States v. Perez, 443 F.3d 772, 777-78 (11th Cir. 2006); United States v. Espinosa-Guerra, 805 F.2d 1502, 1506 (11th Cir. 1986) (explaining that "[a] police officer may approach an individual in a public place, identify himself as a law enforcement officers, and, in a non-coercive manner, ask the individual a few questions, without converting the encounter into a seizure").

No seizure took place until towards the end of Defendant's and Officer Dolan's interaction at the car, which was well after Officer Dolan obtained probable cause for an arrest. A seizure takes place when a police officer confronts an individual and uses force or his official authority to restrain the individual's freedom to walk away. Perez, 443 F.3d at 778; Perkins, 348 F.3d at 969. The show of authority may be in several forms, "such as the threatening presence of several officers, the display of a weapon by an officers, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be

8

compelled." United States v. Baker, 290 F.3d 1276, 1278 (11th Cir. 2002). Thus, when determining whether there has been such a show of authority, factors to be considered include:

> Whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education, and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.

Perez, 443 F.3d at 778 (citing United States v. De La Rosa, 922 F.2d 675, 678 (11th Cir. 1991)); see also United States v. Cusick, 559 F. App'x 790, 791 (11th Cir. 2014). Other factors include the extent to which the officers physically restrained the individual, the officers' demeanor, and whether the officers impeded the suspect's progress. United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989).

"If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." Drayton, 536 U.S. at 200-01. The applicable test for determining whether a person has been seized within the meaning of the Fourth Amendment is an objective test. "[A] person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would not have believed that he was not free to leave." Craig v. Singletary, 127 F.3d 1030, 1041 (11th Cir. 1997) (citing United States v. Mendenhall, 446 U.S. 544, 555 (1980)). "[T]he suspect's subjective views are not determinative." Craig, 127 F.3d at 1041. Likewise, the subjective views of law enforcement officers who are present are also not relevant, except to the extent that they were communicated

to the suspect at the time. Craig, 127 F.3d at 1041 (citing Mendenhall, 446 U.S. at 554 n.6).

Here, Defendant was not seized when Officer Dolan began walking towards the car and entreated, "Please don't roll up your window" numerous times because at that point, Officer Dolan had not shown any official authority or force. The words "please don't roll up your window" is a request and does not appear to be an instruction. Indeed, Defendant disregarded Officer Dolan's request and continued to roll his window up. (Tr. 37). Thus, there is no show of force or official authority up until that point and no seizure.

The question of whether Defendant was seized becomes more difficult at the point once Officer Dolan aimed his weapon (with the light) at Defendant inside the vehicle and began instructing Defendant to roll down the window and to let him see Defendant's hands. (Tr. 37, 42, 49, 57). By this point, Officer Dolan is using his official authority to compel Defendant's compliance, and a reasonable person in Defendant's position would not feel free to leave. Mendenhall, 446 U.S. at 554-55 (explaining that examples of circumstances that might indicate a seizure even where a suspect did not attempt to leave include "the threatening presence of several officers, the display of a weapon by an officers, some physical touching of the person of the citizen, [and] the use of language or tone of voice indicating that compliance with the officer's request might be compelled"). Nevertheless, although Officer Dolan utilized his authority to compel Defendant's compliance with his instructions to lower the window and raise his hands,

Defendant did not actually comply with Officer Dolan's instructions until towards the end of the encounter at the car. Thus, the Government argues that a seizure did not occur at the point that Officer Dolan was aiming his weapon at Defendant because Defendant refused to be seized. The use of physical force with lawful authority, whether or not it succeeded in subduing Defendant, would be sufficient to establish a detention. California v. Hodari D., 499 U.S. 621, 624-26 (1991). Based on the evidence in the record, however, Officer Dolan initially did not lay a hand on Defendant; thus, the encounter here is not a detention by physical force.

Instead, the seizure, once it occurred, was based on Officer Dolan's show of authority. A seizure by means of show of authority requires both a show of authority and *submission* to that authority. United States v. Dolomon, 569 F. App'x 889, 892-93 (11th Cir. 2014); United States v. House, 684 F.3d 1173, 1199 (11th Cir. 2012) (citing Hodari D, 499 U.S. at 628-29). For instance, a law enforcement officer effects a seizure by means of a show of authority when "the officer's words and actions would have conveyed to a reasonable person that he was being ordered to restrict his movement *and those words and actions actually produce his stop*." House, 684 F.3d at 1199 (internal quotations omitted) (emphasis added); see also Hodari D, 499 U.S. at 628-29; United States v. Turner, 684 F. App'x 816, 819-20 (11th Cir. 2017) (explaining that where officers drew their weapons and ordered suspects to stand and show their hands, and the record did not reflect that suspects refused to comply, suspects submitted to a show of authority by police officers and at that point, they had been detained). "An attempted

11

seizure, without actual submission, is not a seizure for Fourth Amendment purposes." Dolomon, 569 F. App'x at 892. Here, no seizure occurred until, at the earliest, late in the encounter at the car. Although Officer Dolan instructed Defendant to roll down the window and let him see Defendant's hands, Defendant never complied with Officer Dolan's instructions to roll the window down and did not raise his hands where Officer Dolan could see them until late in the encounter, well after the point in which Officer Dolan had observed the bag of what appeared to be cocaine in Defendant's lap. (Tr. 42-43).

Thus, by the time Defendant complied with Officer Dolan's instructions and was seized, Officer Dolan had amassed reasonable suspicion to justify Defendant's detention. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Turner, 684 F. App'x at 820 (citing Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). Even without probable cause, the police may stop individuals and detain them briefly in order to investigate a reasonable suspicion that such persons are involved in criminal activity. United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990) (citing Terry v. Ohio, 392 U.S. 1 (1968)). Reasonable suspicion must be more than inchoate hunch and instead requires that police articulate some minimal, objective justification for an investigatory stop. United States v. Boyce, 351 F.3d 1102, 1107 (11th Cir. 2003); Tapia, 912 F.2d at 1370. The police officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those

facts, reasonably warrant" further intrusion under the totality of the circumstances. United States v. Bautista-Silva, 567 F.3d 1266, 1272 (11th Cir. 2009); Tapia, 912 F.2d at 1370.  Officers are expected to use their experience and specialized training to draw inferences from the cumulative information available to them, including inferences that may evade untrained observers.  United States v. Bautista-Villanueva, 524 F. App'x 476, 478 (11th Cir. 2013) ("This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."). Additionally, a reviewing court "may not consider each fact only in isolation and reasonable suspicion may exist even if each fact 'alone is susceptible of innocent explanation'" and even if the suspicion ultimately turns out to be incorrect.  Bautista-Silva, 567 F.3d at 1272; Bautista-Villanueva, 524 F. App'x at 478.  "To determine whether reasonable suspicion exists, we look to see whether 'the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate."  United States v. Franklin, 323 F.3d 1298, 1301 (11th Cir. 2003).

In this case, Officer Dolan had both reasonable suspicion that criminal activity was afoot at least by the time he took his first look inside the car with the flashlight and viewed a substance, which based upon his experience and training, appeared to be

baseball-sized amount of cocaine in Defendant's lap.[1] (Tr. 38-39, 49). This occurred well before the point at which Defendant complied with Officer Dolan's instructions, and thus, well before Defendant was seized. Accordingly, it is appropriate to consider the information for purposes of determining whether there was reasonable suspicion for Defendant's detention or probable cause for his arrest. While the presence of what appeared to be cocaine alone was enough to support Officer Dolan's reasonable suspicion, Officer Dolan's suspicions were also reasonable and justified because the incident occurred in a high crime area in a place where there appeared to be narcotics activity on the day before. (Tr. 28-31). Also, Officer Dolan had just seen a man who was interacting with Defendant move abruptly away when the officers identified themselves, and had observed Defendant resisting his instructions and appearing to

---

[1] Officer Dolan observed the cocaine because it was in plain view when he was at the driver's side window pointing his light into the car. The presence of contraband in plain view can provide probable cause supporting a warrantless search of a vehicle. United States v. Spoerke, 568 F.3d 1236, 1249 (11th Cir. 2009). Neither probable cause nor reasonable suspicion is necessary to look through a car window as long as the officer has a right to be in close proximity to the vehicle. United States v. Smith, 459 F.3d 1276, 1290-91 (11th Cir. 2006) (the "plain view" doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and (2) the incriminating character of the item is immediately apparent). Here, the officer, like any private citizen, could lawfully be in the parking lot for the apartment complex. Likewise, the fact that Officer Dolan had to use his light to view the item, does not offend the Constitution. Texas v. Brown, 460 U.S. 730, 740 (1983) (explaining that use of artificial means to illuminate a darkened area inside a car does not constitute a search and triggers no Fourth Amendment protection); United States v. Desir, 257 F.3d 1233, 1236 (11th Cir. 2001) (denying motion to suppress pursuant to plain view doctrine where crack cocaine was in plain view when officer shined his flashlight inside the defendant's car); Wilson v. Tucker, No. 5:11cv133/RS/EMT, 2012 WL 3137323, at *10 (N.D. Fla. July 2, 2012).

reach for a weapon. (Tr. 33, 35). Under these circumstances, Officer Dolan's suspicion that Defendant was engaged in criminal activity was reasonable and Defendant's seizure was lawful. United States v. Herrera, 271 F. App'x 852 (11th Cir. 2008) (holding that where detective observed a man park alongside of defendant's car, approach the driver's side of the defendant's vehicle, and hand the defendant what appeared to be crack cocaine in exchange for money, and officer had observed similar drug transactions in the same location in the past, officer had reasonable suspicion of criminal activity); see also United States v. Turner, 684 F. App'x at 820 (explaining that the fact that the detention occurred in a high crime area is among the considerations for reasonable suspicion analysis). Based on the same circumstances, the officers also had probable cause supporting Defendant's arrest. United States v. Edwards, 307 F. App'x 340, 344-45 (11th Cir. 2009) (explaining that based on defendant's suspicious movements where he appeared to be hiding something between the seats of the car and the officer's observation of what appeared to be a bag of marijuana in plain view between the front seats of the car, the officers had probable cause to arrest defendant).

Additionally, once Officer Dolan observed what appeared to be cocaine in Defendant's lap and Defendant's resistant and suspicious behavior, the officers could lawfully search the car without a warrant pursuant to the automobile exception. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches." U.S. Const. amend. IV. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted

15

without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  The automobile exception applies under the circumstances of this case.  Under the automobile exception, police officers may conduct a warrantless search of a vehicle if the vehicle is readily mobile and there is a fair probability that contraband or evidence of a crime will be found in the vehicle. United States v. Carter, 481 F. App'x 475, 477 (11th Cir. 2012); United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003); see also United States v. Simeon, No. 17-14620, 2018 WL 4998132, at *2 (11th Cir.  Oct. 16, 2018) (explaining that the automobile exception does not have a separate exigency requirement and that if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the car).  Here, the mobility requirement was met because three men were sitting in the automobile at the time of the encounter and Defendant raised the window upon Officer Dolan's approach. (Tr. 37-38); United States v. Gant, No. 18-11331, — F. App'x —, 2018 WL 6179423, at *2 (11th Cir. Nov. 27, 2018) (agreeing with district court that mobility requirement of automobile exception was met where individual was sitting inside parked car with the driver's door open and the interior lights of the vehicle on); United States v. Alexander, 835 F.2d 1406, 1410 (11th Cir. 1988) (explaining that vehicle did not have to be moving at the moment when police obtain probable cause to search for the automobile exception to apply). Futhermore, there was more than a fair probability that evidence of a crime would be

16

found inside the vehicle because Officer Dolan had viewed the cocaine in plain view. Accordingly, the search of the automobile without a warrant was lawful.

Defendant contends that the search of the car following the obtaining of the search warrant was unlawful because the search warrant was not supported by probable cause. Here, however, the officers did not have to obtain a search warrant because they could lawfully conduct the search pursuant to the automobile exception to the warrant requirement. Even if the police were required to obtain a warrant, Defendant's argument still fails because the affidavit submitted in connection with the search warrant did supply probable cause for the search. In attempting to ensure that search warrant affidavits comply with the Fourth Amendment's prohibition against unreasonable searches and seizures resulting from warrants issued without probable cause, the issuing magistrate "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Miller, 24 F.3d 1357, 1361 (1994). In this case, the warrant indicated that the police had apprehended an individual in the vehicle who was holding a bag containing cocaine and who possessed a firearm. This information was enough to supply probable cause that evidence of a crime would be found in the car. Accordingly, the search of the white vehicle was lawful, and Defendant's Motion to Suppress Evidence should be **DENIED**.

17

## CONCLUSION

Based on the foregoing reasons, this Court **RECOMMENDS** that Defendant's Motions to Suppress be **DENIED** with respect to Defendant's arguments for suppression of evidence (Docs. 43, 54, 63), and **DEEMED MOOT** with respect to Defendant's arguments for suppression of his statements. (Docs. 43, 54, 63). As there are no further motions pending, the undersigned certifies this case ready for trial. The Clerk is directed to terminate the reference to the undersigned.

**SO ORDERED AND REPORTED AND RECOMMENDED** this  7   day of February, 2019.

_____
LINDA T. WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE