IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE |
|---|---|
| v. | NO. 1:17-CR-249-MHC-LTW |
| RODERICK MANSON, | |
| **Defendant.** | |

## ORDER

This action comes before the Court on the Final Report and Recommendation ("R&R") of Magistrate Judge Linda T. Walker [Doc. 76] recommending that Defendant's Motions to Suppress Evidence [Docs. 43, 54, and 63] be denied and Defendant's Motions to Suppress Statements [Docs. 43, 54, and 63] be denied as moot. The Order for Service of the R&R [Doc. 77] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. Defendant has filed his objections to the R&R [Doc. 78] ("Def.'s Objs.").

I. **LEGAL STANDARD**

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings

or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (citations omitted). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59(a). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Defendant objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## II. DISCUSSION

### A. Detention and Arrest of Defendant

Defendant contends that there was no articulable suspicion to detain him, which he contends occurred when Officer Dolan pointed a rifle at him while Defendant was inside a vehicle. Def.'s Objs. at 3-4. Defendant also asserts that because the officers were not aware Defendant had engaged in any illegal activity prior to Dolan's approaching the vehicle, the Magistrate Judge erred by finding that there was reasonable suspicion for a detention or probable cause to support an arrest. Id. at 2-3. A brief review of the circumstances surrounding Defendant's detention is necessary to determine when the detention actually occurred and whether there was reasonable suspicion to detain or probable cause to seize Defendant.

One day prior to the incident involving Defendant, Joshua Mauney, a fugitive investigator employed by the Fayette County Sheriff's office and assigned to the United States Marshal's Southeastern Regional Fugitive Task Force, was tasked with apprehending Melvin Gibson, a gang member who was wanted by Douglas County on a probation violation. Tr. of Sept. 5, 2018, Suppression Hr'g [Doc. 58] ("Tr.") at 5-6, 30. Mauney surveilled the Sierra Ridge Apartments, located in a "high-crime area" where the gang was known to operate, and observed

Gibson exiting an apartment, getting into a white vehicle, and driving away. Id. at 6-7.

The next day, April 14, 2017, Mauney and other task force officers, including United States Marshals, went to the apartment in unmarked cars for the purpose of arresting Gibson. Id. at 8, 32. The officers were all wearing police vests clearly marked as law enforcement. Id. at 8-9, 32. Because earlier surveillance revealed people coming and going from the back door of the apartment and involved in suspected narcotics activity, Officer Timothy Dolan, another task force member, proceeded to the back of the residence with other task force members. Id. at 7-8, 31-33.

As Officer Dolan and other task force members pulled up to the rear containment area, they observed a black male wearing a red shirt at the driver's side of a white vehicle. Id. at 33. Dolan testified that "[n]ormally that would not cause alarm; however, we had information that Gibson was in a white vehicle prior to that." Id. The African-American male, upon seeing the officers exit their vehicles and identifying themselves as police, "began to abruptly move away" in the direction of Gibson's apartment. Id. at 33, 35. Several officers yelled at the man to get on the ground and he complied with the officers' request. Id. at 35.

4

Dolan then "focused [his] attention on the white vehicle and the occupant in the driver's seat," later identified as Defendant, to make sure who was in the vehicle and that all occupants were safe.[1] Id. at 35-36. Defendant made visual eye contact with Dolan and began to roll up his window, and continued to roll up the window despite Dolan asking him not to do so. Id. at 36-37. After Defendant rolled up the window, Dolan proceeded to the driver's side window, pointed his long rifle with an attached flashlight into the driver's side, and instructed Defendant to roll down the window and let Dolan see his hands. Id. at 37. Defendant refused. Id. Dolan was able to look inside the flashlit interior of the car and saw a "baseball-sized amount of white powder" on Defendant's lap. Id. at 37-38. Based upon Dolan's experience and training, he believed the substance to be powdered cocaine. Id. at 38.

Dolan then commanded the occupants of the vehicle to roll down the windows and "let me see your hands." Id. at 40. Defendant "originally had his hands up for a split second, and then moved his right hand down to the right side of his right leg in between the driver's side seat and the center console." Id. Dolan was concerned that Defendant could be reaching for a firearm. Id. at 41. Dolan

---

[1] Aside from Defendant, there were two other African-American males in the vehicle. Tr. 38.

concentrated his weapon on Defendant and told him "numerous times" not to do it and to slowly raise his hands. Id. Defendant then finally raised his hands, Dolan asked him to slowly open the door or window, and Defendant put his hands back down, with his right hand in the same spot between the driver's side seat and the center console. Id. at 42. Dolan then testified as follows: "I told him don't do it, I was going to shoot him in the face if he did it. I told him don't do it again, to raise his hand very slowly so I could see what's in his hands. I must have said it two or three times, and he finally raised his hand with no firearm in it." Id. at 43.

Once all of the occupants had exited the vehicle, a bag of cocaine and a black Glock handgun could be seen on the floorboard of the driver's seat. Id. at 43-44. A Sig Sauer black handgun was also found under the front passenger seat, and a third large black handgun was found in the area where Defendant had been reaching. Id. at 46-47.

This Court agrees with the Magistrate Judge that, between the time of Officer Dolan's approach of the vehicle and the time Defendant finally complied with Dolan's instructions to raise his hands and exit the vehicle, Defendant was not seized but there was reasonable suspicion to justify his detention. R&R at 9-15. It is well-settled that probable cause is not necessary under the Fourth Amendment to conduct an investigatory stop. The police "may, consistent with the Fourth

Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000); see also Terry v. Ohio, 392 U.S. 1, 30-31 (1968). To determine whether reasonable suspicion exists, the court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvisu, 534 U.S. 266, 273 (2002). Examining the totality of the circumstances "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Id. (quotation and citation omitted). The Court will give due weight to an officer's experience and expertise when evaluating reasonable suspicion. Ornelas v. United States, 517 U.S. 690, 699 (1996); see also United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2000) ("[g]reat deference is given to the judgment of trained law enforcement officers on the scene.") (internal quotation marks and citation omitted).

In this case, when Officer Dolan approached the vehicle where Defendant was sitting in the driver's seat and asked Defendant not to roll up his window, there was no requirement for any reasonable suspicion prior to this non-coercive

7

interaction. See Craig v. Singletary, 127 F.3d 1030, 1041 (11th Cir. 1997) (explaining that a police officer may approach a suspect and engage in a consensual encounter without the need for reasonable suspicion). Regardless of the lack of need for reasonable suspicion to approach the vehicle, there was in fact reasonable suspicion to conduct an investigatory stop in this case. Prior to observing the white vehicle with an African-American male near the driver's window at the rear of the apartment, the task force was aware that there was possible narcotics activity at the site and that an African-American male previously was observed inside a white vehicle at the same location. Dolan then observed the African-American male attempt to abruptly move away from the vehicle once he saw law enforcement officers. Dolan had reasonable suspicion to conduct an investigatory stop at that point even thought none was needed.

The next action undertaken by Dolan occurred after Dolan asked Defendant not to roll up his window and Defendant refused. Dolan then pointed his long rifle with an attached flashlight into the driver's side and instructed Defendant to roll down the window and let Dolan see his hands. As the Magistrate Judge found, at this point, Defendant was not "free to leave," but because Defendant refused to comply with Dolan's instruction, he was not yet seized. R&R at 10-12. Once again, based on the prior day's activity and observations at the apartment, the fact

8

that the incident occurred in a "high-crime area," and the additional fact that Defendant refused to comply with Dolan's instructions, there was reasonable suspicion that criminal activity may be afoot, justifying Dolan's detention of Defendant. By the time Defendant finally complied with Dolan's instruction to raise his hands and exit the vehicle, Dolan has probable cause to arrest Defendant because he observed in plain view (looking through the car's flash lit window) what appeared to be powdered cocaine in Defendant's lap. Consequently, Defendant's initial detention and eventual arrest were supported by reasonable suspicion and probable cause, respectively, and his objections are **OVERRULED**.

### B.     Search of the Automobile

Defendant additionally objects that the observation of the cocaine in plain view cannot be justified because Dolan's initial conduct in pointing the rifle at Defendant lacked probable cause. Def.'s Objs. at 5. However, as previously discussed, Dolan had reasonable suspicion to detain Defendant at the time the cocaine was observed in plain view from outside the vehicle. Once the cocaine was observed in plain view, the officers could lawfully search the car without a warrant. "Under the automobile exception [to the general warrant requirement], police officers may conduct a warrantless search of a vehicle if the vehicle is

9

readily mobile and if they have probable cause to believe that the vehicle contains contraband." United States v. Carter, 481 F. App'x 475, 477 (11th Cir. 2012) (citing Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam)).

Once again, prior to the search of the vehicle, Dolan observed one African-American male try to abruptly move away from the side of a vehicle that may have been involved in drug activity a day earlier, Defendant ignoring instructions to roll down his window and put his hands up, and a white substance appearing to be cocaine on Defendant's lap. This justified the search of the vehicle without a warrant in accordance with the automobile exception. Defendant's objection to the Magistrate Judge's findings concerning the search are **OVERRULED**.

### III. CONCLUSION

Accordingly, after a *de novo* review of those portions of the R&R to which Defendant objects, the Court **OVERRULES** his objections [Doc. 78]. Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 76] as the Opinion and Order of the Court.

It is hereby **ORDERED** that Defendant's Motions to Suppress Evidence [Docs. 43, 54, and 63] are **DENIED** and Defendant's Motions to Suppress Statements [Docs. 43, 54, and 63] are **DENIED AS MOOT**.

It is further **ORDERED** that the time between the date the Magistrate Judge certified Defendant ready for trial on February 7, 2019, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for good cause, and the interests of justice in considering Defendant's objections to the Report and Recommendation outweigh the right of the public and the right of the Defendant to a speedy trial, pursuant to 18 U.S.C. § 3161, *et seq*.

**IT IS SO ORDERED** this 14th day of March, 2019.

_____
MARK H. COHEN
United States District Judge